IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON CARLSON & MARION BENJAMIN CARLSON,<br><br>       Plaintiffs,<br><br>    v.<br><br>CENTURY SURETY CO.,<br><br>       Defendant.<br>_____/ | No. C 11-00356 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

On May 27, 2011, the Court heard argument on plaintiffs' Motion for Partial Summary Judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion.

**BACKGROUND**

This is an action for failure to defend and failure to indemnify on a real estate errors and omissions ("E&O") liability policy. Plaintiffs Ron Carlson and Marion Benjamin Carlson have brought an action for declaratory relief, breach of contract, and breach of covenant of good faith and fair dealing against defendant Century Surety Co. ("the insurer") based on defendant's actions refusing to defend in a state court suit brought by plaintiffs against Gold Mountain Investments, Inc. dba Prudential California Realty ("Gold Mountain"); Betty A. Low; Julie Fox; and Jane Lyla Oberg (collectively: "Prudential California"). Plaintiffs have sued defendant under an assignment of rights by Gold Mountain and Oberg, who were insured by defendant.

## I. The underlying claim

Plaintiffs Ron Carlson and Marion Benjamin Carlson listed their home for sale with Prudential California Realty. On July 18, 2006, plaintiffs entered into a sale agreement for $1,262,000. Exhibits in Support of Def.'s Oppo. to Mot. for Partial Summ. J. ("Def. Exs."), Ex. 8, CS 0337. The sale fell through. *See id.*, CS 0336. On September 1, 2006, the purchaser signed papers releasing a $1,000 deposit to plaintiffs, which plaintiffs signed as well. *Id.* The next day, plaintiffs returned to the real estate office and wrote on the papers that they had been signed in error. *Id.* They told Julie Fox, a real estate agent in the office, that they wanted $5,000 rather than $1,000. *Id.* at CS 0329. By July 2007, it became clear that the $1,000 had never been deposited in escrow. *Id.* at CS 0333.

Plaintiffs filed suit against Prudential California in the Superior Court of California in San Francisco on June 10, 2008, demanding over $70,000 in damages. *Id.* at CS 0268–0287. In May 2010, plaintiffs entered into a settlement agreement with Prudential California, in which, among other things, Gold Mountain and Oberg agreed to allow a default judgment to be entered against them. Decl. of Alan L. Martini in Supp. of Pl. Mot. for Partial Summ. J., Ex. 6, at 2.[1] Plaintiffs promised not to file a writ of execution on the judgment against Gold Mountain or Oberg. *Id.* Prudential California assigned plaintiffs all of their claims and causes of action against Century Surety. *Id.*

On January 21, 2011, the Superior Court entered default judgment in favor of plaintiffs in the amount of $3,334,834.61. Martini Decl., Ex. 7, at 2.

## II. The insurance policy

Gold Mountain was the named insured on an E&O policy issued by defendant with a policy

---

[1] Defendant objects to a large portion of the Martini Declaration, including the settlement agreement in its entirety. The Court has relied on the objected to evidence only to the extent that it has accepted as fact that Prudential California assigned plaintiffs the two causes of action against defendant that are at issue in this motion. Defendant's objections to that portion of the settlement agreement as unauthenticated and lacking in foundation are overruled. The Court also notes that defendant does not contest the fact that Prudential California assigned its claims to plaintiffs, or otherwise argue that plaintiffs do not have standing. Defendant's remaining objections are overruled as moot.

Plaintiffs have also objected to certain evidence presented by defendant. The Court does not rely on that evidence in its opinion, and plaintiffs' objections are denied as moot.

period from February 1, 2008 until February 1, 2009.[2] Def. Exs., Ex. 22, CS 0783. It was a claims made and reported policy. *Id.* at CS 0787 (providing coverage for damages that result from a claim "that is both first made against the 'Insured' and reported in writing to the 'Company' during the 'Policy Period'"). With certain exceptions, the policy provided coverage where an act or omission made after the retroactive date of the policy (February 1, 1995, *id.* at CS 0786) gave rise to certain types of claims first made and reported during the policy period.

The policy defines "Claim" as:

> a demand received by the "Insured" for money or services arising out of an act or omission, including "Personal Injury," in the rendering of or failure to render "Professional Services". A demand shall include the service of suit or the institution of mediation or an arbitration proceeding against the "Insured".

*Id.* at CS 0788. The policy does not provide coverage where, even where the claim was first made and reported during the policy period, but

> prior to the inception date of the first Policy issued by the "Company" . . . no "Insured" had a basis to believe that any such act or omission or "Related Act or Omission" might reasonably be expected to be the basis of a "Claim" against an "Insured."

*Id.* at CS 0787.

### III. Claim reported, defense denied

Gold Mountain timely tendered plaintiffs' state court action to defendant for defense and indemnity. Gold Mountain also provided defendant with the real estate file that Gold Mountain had created for plaintiffs' transactions. Inside the real estate file was a letter written by the Carlsons and dated August 20, 2007. *Id.* at CS 0485. The letter requested that Prudential California attend a mediation in order to attempt to resolve a conflict, and it indicated that the Carlsons were considering making a $65,000 claim against Prudential California. *Id.* It was attached to a certificate of service dated August 21, 2007. Ex. 8, CS 0486.[3] The certificate states that the document was served by mail,

---

[2] The policy was cancelled part way through for failure to pay the premium, but that is not a fact that is relevant to the adjudication of this summary judgment motion.

[3] Defendant has provided evidence that the draft complaint, naming Gold Mountain as a defendant, was attached to the letter and included in the file. To the extent that there is a question of fact whether this is true, the Court resolves that question in favor of defendant for the purposes of ruling

3

1 but does not say that postage was affixed.  It also lists the correct address for Prudential California, but
2 first names the parent organization, Prudential Real Estate Affiliates, Inc.  The letter does not have a
3 date-received stamp.

4       On October 3, 2008, defendant denied coverage.  *Id.* at Ex. 13, CS 0086–0089.  Betty Low
5 responded to the denial letter in an email that said

> I am responding to your letter of declining coverage for the claim I submitted regarding Ron and Marion Carlson.  I do not feel that your decision is adequate.  I do not recall receiving g [sic] the letter to mediation dated August 2007.  If I had I would of contacted my E&O company.  I am not familiar with litigation and quite intimidated by the idea someone would want to sue me or my company.  I am positive I would of contacted my carrier so that they could review the matter and advise me how to proceed.
>
> Please review my claim again and provide me with coverage.  I have been a Realtor for over 19 years and have always managed to handle my affairs in professional and ethical manner.  As per my record with the E&O companies I have had I do not take unnecessary risks.

*Id.* at Ex. 16, CS 0080.

Without further investigation into the facts of the case, defendant again denied coverage on October 27, 2008.  *Id.* at Ex. 20, CS 0148.

Currently before the Court is plaintiffs' motion for partial summary judgment.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial.  The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case.  *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out

---

on this motion.

4

1 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

**I.    The insurer's duty to defendant**

Plaintiffs have moved for summary judgment on their first cause of action: declaratory relief regarding defendant's duty to defend in the state court case filed by plaintiffs against the insured.

"Liability insurers owe a duty to defend their insureds for claims that potentially fall within the policy's coverage provisions. The carrier must defend a suit which potentially seeks damages within the coverage of the policy. However, in an action where no claim is even potentially covered, the insurer owes no duty to defend." *Hameid v. National Fire Ins. of Hartford*, 31 Cal. 4th 16, 21 (2003).

"[F]or an insurer, the existence of a duty to defend turns not upon the ultimate adjudication of coverage under its policy of insurance, but upon those facts known by the insurer at the inception of a third party lawsuit. Hence, the duty may exist even where coverage is in doubt and ultimately does not develop." *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 295 (1993) (internal quotation marks and alterations omitted) (holding that the insurer may rely on the complaint, the insurance policy, and extrinsic facts known to it at the time of tender). "The defense duty is a continuing one." *Id.* It can

5

arise on tender of defense, *id.*, or it can arise later if new information becomes available. *Am. States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 26 (2009). In either case, it lasts either until the underlying lawsuit is concluded or it has been shown that there is no potential for coverage.

Where it is "undisputed" that the insured under a claims made and reported policy "became aware of the [claim against it] . . . before the [insurance] policy periods commenced," there is no genuine issue of material fact: the insurer did not have a duty to defend. *See Evanston Ins. Co. v. OEA, Inc.*, 566 F.3d 915, 919 (9th Cir. 2009) (noting also that the insured cannot defeat summary judgment by presenting evidence that the insured did not subjectively believe that something constituted notice where that subjective belief was unreasonable).[4] In contrast, where the insured disputed having received notice of a claim, and the insurer was not in possession of evidence that the insured was lying about such receipt at the time of its denial of coverage, there is a possibility of coverage, and the insurer has a duty to defend. *See National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 499 (9th Cir. 1997).

An insurer may rely on *caselaw* developed after it denied defense to support its denial. *See National Steel,* 121 F.3d at 500 (*citing Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 26 (1995)). However, it may not rely on later developed *evidence* to show that it was ultimately correct about its denial of defense. *Id.*

The parties agree that Gold Mountain and Oberg were insured by defendant under a claims made and reported policy. They agree that plaintiffs' letter to the insured constituted a claim made.[5] They agree that at least some portion of plaintiffs' claim constituted the type of errors or omissions covered under the E&O policy. They agree that if the insured received the letter before February 2008, then ultimately there would be no coverage under the insurance policy. Plaintiffs' argument is that defendant

---

[4] Defendant claims *OEA* stands for the proposition that the date the insured receives notice of a claim from a claimant is all that matters, "even where the importance of that notice is misunderstood by the insured." Oppo. 12. The holding of *OEA* is more narrow, and is limited to cases where the importance of the notice is *unreasonably* misunderstood by the insured.

[5] The denial letters characterized the Carlson's August 20 letter as "notice of a potential claim," rather than an actual claim. Ex. 11, CS 0182. Defendant now relies on the holding in *Westrec Marina Management, Inc. v. Arrowood Indemnity Co.*, 163 Cal. App. 4th 1387 (2008), to argue that the August 20 letter is actually a claim, rather than a notice of a potential claim. Plaintiffs do not object to this characterization, only to the defendant's conclusion as to when the insured received the letter and thus when the claim was first made.

6

1 refused to defend the suit at a time when it was aware of facts that gave rise to the possibility that the
2 insured did not actually receive the letter until February 2008, meaning that it was aware of facts that
3 gave rise to the possibility of coverage, and therefore it was required to defend.

4 The parties essentially agree what the defendant had in its possession at the times that it declined
5 coverage.[6] When defendant initially denied coverage on October 3, 2008, it had in its possession the
6 Carlsons' complaint, the insurance policy, the tender, and the insured's real estate file on the Carlsons.
7 Def. Exs., Ex. 13, CS 0086–0089. The complaint was filed during the policy period and the tender was
8 timely made under the terms of the insurance policy. The Carlsons' complaint was a "mixed
9 complaint," meaning that some but not all of the claims fell within the terms of coverage. Attached to
10 the insurance policy was a signed declaration by the insured that she had polled her employees and any
11 agents working under her real estate license regarding any possible claims pending against them, and
12 that as of February 2008, no one was aware of any possible claims. *Id.* at Ex. 22, CS 0766.

13 Inside the Carlsons' real estate file was a letter written by the Carlsons and dated August 20,
14 2007. Ex. 8, CS 0485. The letter requested that the insured attend a mediation in order to attempt to
15 resolve a conflict, and it indicated that the Carlsons were considering making a $65,000 claim against
16 the insured. *Id.* It was attached to a certificate of service dated August 21, 2007. Ex. 8, CS 0486. The
17 certificate states that the document was served by mail, but does not say that postage was affixed. It also
18 lists the correct address for the insured, but first names the parent organization, Prudential Real Estate
19 Affiliates, Inc. The letter does not have a date-received stamp. Also in the file was plaintiffs' draft
20 complaint.

21 When defendant denied the insured's request for reconsideration on October 27, 2008, it had
22 received Betty Low's email. Thus, among other things, it was aware that the Gold Mountain was
23 covered under another E&O policy in August 2007. The existence of this fact decreased the likelihood
24 that the insured would have concealed the Carlsons' claim in order to secure coverage.

25 As defined in the policy, a claim is a demand "*received by*" the insured. Ex. 22, CS 0788
26

---

27 [6] As discussed above, the only exception is the draft complaint. For the purposes of this
28 motion, the Court will assume that defendants had found the draft complaint in plaintiffs' real estate file before they denied coverage.

7

(emphasis added). At the time that it denied the insured's request for reconsideration, defendant could not "point to 'undisputed' facts extraneous to the allegations of the complaint which 'conclusively' demonstrate[d] that" the insured received the August 2007 letter before the coverage period, and therefore that "there [wa]s no 'potential for coverage.'" *See Vann v. Travelers Companies*, 39 Cal. App. 4th 1610, 1615 (1995) (*quoting Haskel, Inc. v. Superior Court*, 33 Cal. App. 4th 963, 975 (1995)); *see also Amato v. Mercury Cas. Co.*, 18 Cal. App. 4th 1784, 1792 (1993) ("Human nature being what it is, we have no doubt that insureds sometimes lie to their carriers and vice versa. This possibility does not provide sufficient reason to overturn the rule [regarding the duty to defendant when there is a potential for coverage].").

Defendant argues that *plaintiffs* are required to "establish" that the claim was first made during the policy period. Oppo. at 12. That is incorrect. The plaintiffs' burden is merely to show that there was the *potential* for liability, *Montrose Chemical*, 6 Cal.4th at 299, by reference to "facts available to the insurer at the time the insured tenders its claim for a defense," *Vann*, 39 Cal. App. 4th at 1614, or at the time of denial of coverage, *National Steel*, 121 F.3d at 500.

Defendant argues that the facts available to it should be viewed in the light most favorable to it, as the non-moving party on a summary judgment motion. This is not quite correct either. To the extent that there is a dispute about what facts were known to defendant at the time, the evidence should be viewed in the light most favorable to defendant. But, even on a summary judgment motion, "'[a]ny doubt as to whether th[ose] facts g[a]ve rise to a duty to defend is resolved in the insured's favor.'" *See Vann*, 39 Cal. App. 4th at 1615 (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)).[7]

---

[7] The California Supreme Court explained in *Montrose*,
When an insured successfully moves for summary judgment that the insurer owes a defense duty, the insurer's duty is clear. If an insurer successfully moves for summary judgment that it owes no duty to defend, the absence of a duty is clear. But an unfavorable ruling on the insured's motion does not establish the absence of a defense duty; it merely means that the question whether the insurer must defend is not susceptible of resolution by undisputed facts, but instead must go to trial. *In the interim, presumably there continues to exist a potential for coverage and thus a duty to defend.* As we said in *Horace Mann*, when the evidence adduced in the declaratory relief action does not permit the court to eliminate the possibility that the insured's conduct falls within the coverage of the policy, "the duty to defend is then established, absent additional evidence bearing

8

Defendant argues that the insured had a basis to believe that a claim would be asserted against it by the Carlsons prior to February 2008 that was independent of the August 2007 letter, which precludes any possibility of coverage. It points to some evidence of which it was not aware when it denied coverage. It also points to the notes written in the Carlsons' real estate file by plaintiffs and Julie Fox. *See* Def. Exs., Ex. 8, CS 0319, CS 0329, CS 0336. Plaintiffs signed a document on September 1, 2006, entitled "Cancellation of Contract, Release of Deposit and Joint Escrow Instructions." *Id.* at CS 0336. It stated "Buyer releases good faith deposit to sellers in the amount of $1,000." *Id.* The notes indicate that plaintiffs returned the next day, wrote on the document that it had been "signed in error." *Id.* Mr. Carlson told Ms. Fox that "he didn't want $1,000. He wanted $5,000." *Id.* at CS 0329. A year later, he still had not received the $1,000 deposit, and returned to the office to ask about it. *Id.* It was the buyers who would have been responsible for releasing the $1,000 deposit (had it existed), and thus presumably the buyers from whom the Carlsons wanted $5,000. These notes do not constitute undisputed facts conclusively demonstrating that there was no potential for coverage. *See Vann*, 39 Cal. App. 4th at 161.

Finally, defendant argues that plaintiffs are estopped from arguing that the claim was first made during the policy period, because they themselves mailed the demand letter in August 2007 and therefore "could not honestly testify they first asserted their claim . . . during [the] policy period." Assuming that an estoppel argument can be made where the question at bar is what the insurance company knew when it denied coverage, and defendant cites no case law at all, the policy defines a claim as a demand *received*, not when the claimant attempted to assert it.

Plaintiffs' motion for summary judgment for declaratory relief regarding defendant's duty to defend is GRANTED.

---

on the issue."
6 Cal. 4th at 301 (emphasis added) (citation omitted); *see also Buss v. Superior Court*, 16 Cal. 4th 35, 46 (1997) ("[I]f a duty to defend exists . . . [it can be] extinguished only prospectively and not retroactively: before, the insurer had a duty to defend; after, it does not have a duty to defend further."); Hon. H. Walter Croskey et al., Cal. Prac. Guide Ins. Lit. Ch. 7B-F, 7:675 ("Where disputed factual issues preclude summary judgment in the insurer's favor [regarding the duty to defend], denial of the motion establishes the insurer's duty to defend the underlying action as a matter of law . . . .").

9

## II. The covenant of good faith and fair dealing implied in an insurance contract

Plaintiffs also move for summary judgment on their fourth cause of action, breach of the covenant of good faith and fair dealing.

"In addition to the right to sue an insurer in contract, if the insurer acts unreasonably and without proper cause in failing to investigate a claim, refusing to provide a defense, or either delaying or failing to pay benefits due under the policy, the insured can sue in tort for breach of the covenant of good faith and fair dealing." *Emerald Bay Community Assn. v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1093 (2005). To establish a bad faith claim, the insured must show that (1) benefits due under the policy were withheld and (2) the reason for withholding the benefits was unreasonable or without proper cause. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001); *Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910, 920 (1978). Although there is no liability where the withholding of benefits was "based on a legitimate dispute as to the insurer's liability . . . [i]n the insurance bad faith context, a dispute is not 'legitimate' unless it is founded on a basis that is reasonable under all the circumstances." *See Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 724 n.7 (2007) (discussing allegations of delay in payment of claim). "[T]he reasonableness of the insurer's decisions and actions must be evaluated as of the time that they were made; the evaluation cannot fairly be made in the light of subsequent events . . . ." *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 90 Cal. App. 4th 335, 347 (2001).

"Since a tort action for breach of the covenant of good faith and fair dealing 'is one seeking recovery of a property right, not personal injury,' to prevail the insured must show proof of economic loss." *Emerald Bay*, 130 Cal. App. 4th at 1094. "Typically, such economic loss includes the attorney fees incurred by the insured in attempting to secure the benefits due the insured under the policy." *Richards v. Sequoia Ins. Co.*, --- Cal. Rptr. 3d ----, 2011 WL 1615407, * 5 (Ct. App. 2011) (citing *Brandt v. Superior Court*, 37 Cal. 3d 813, 817 (1985)).[8]

---

[8] California courts have described the difference between breach of the duty to defend and breach of the implied covenant, and between the damages recoverable for each, as follows:
> Breach of an insurer's duty to defend violates a contractual obligation and, where unreasonable, also violates the covenant of good faith and fair dealing, for which tort remedies are appropriate. Contractual damages are the amount which will compensate

Plaintiffs argue that any wrongful refusal to provide a defense that is based on the insurance company's interpretation of facts is per se unreasonable, because wherever there is a question of fact regarding coverage there is a duty to defend. Defendant argues that reasonableness is a question for the jury.

Plaintiffs rely on *Century Surety Co. v. Polisso*, 139 Cal. App. 4th 922 (2006), but it effectively supports defendant's position. In *Polisso*, the trial court had granted the insured summary judgment on the question of duty to defend. *Id.* at 938. The question of tort liability was decided at a jury trial. *Id.* at 939.

Moreover, there are genuine issues of material fact as to whether the breach caused economic loss. Where an insurer breached its implied covenant of good faith and fair dealing by failing to provide a defense, it is "the general rule" that the insurer "is bound by the judgment against its insured as to all issues which were litigated in the action against the insured." *Clemmer v. Hartford Insurance Co.*, 22 Cal. 3d 865, 884 (1978) (quotation marks omitted); *see also Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825, 837 (1997).

> Courts have for some time accepted the principle that an insured who is abandoned by its liability insurer is free to make the best settlement possible with the third party claimant, including a stipulated judgment with a covenant not to execute. Provided that such settlement is *not unreasonable and is free from fraud or collusion*, the insurer will be bound thereby.

*Pruyn v. Agricultural Ins. Co.*, 36 Cal. App.4th 500, 515 (1995) (emphasis added). This rule "exclude[s], of course, those trial proceedings which are clearly a patent sham collusively designed to create a judgment for which liability insurance coverage would then exist." *Id.* 517 n.16.

Plaintiffs' claim ballooned from a desire to recover a $1,000 deposit, to a wish for a $5,000 recovery, to a complaint for $65,000, to a judgment for $3,334,834.61, all stemming from a real estate transaction involving a house that was once under contract to sell for $1,262,000. Although evidence adduced at trial may well show that the agreement reached between plaintiffs and the insured was

---

the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. Tort damages are the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

*Advanced Network, Inc. v. Peerless Ins. Co.*, 190 Cal. App. 4th 1054, 1061 (2010) (quotation marks and citations omitted).

11

reasonable and free from fraud or collusion, when the record before the Court is viewed in the light most favorable to defendant plaintiffs are not entitled to judgment.

Plaintiffs' motion for summary judgment on their claim for breach of the covenant of good faith and fair dealing is DENIED.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion for partial summary judgment. (Doc. 10).

**IT IS SO ORDERED.**

Dated: May 27, 2011

SUSAN ILLSTON
United States District Judge